UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

NAMISH PARIKH,                          *

            Plaintiff,              *

          v.                        *          Civil Case No. 8:24-CV-03627-AAQ

CHRISTOPHER C. FOGELMAN,                 *

            Defendant.             *

## MEMORANDUM OPINION

This is a case alleging that a Maryland state court judge improperly entered an Order. Plaintiff Namish Parikh brings this suit under 42 U.S.C. § 1983 against Defendant Associate Circuit Court Judge Christopher C. Fogleman, alleging denial of access to court, retaliation, fabrication of evidence, and violation of his rights under the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment.  ECF No. 31, at 16, 21, 23, 31.  Pending before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim.  ECF No. 32.  For the following reasons, the Court lacks jurisdiction; accordingly, it shall grant Defendant's Motion and dismiss the case.

## BACKGROUND

Plaintiff Namish Parikh brings this action against Defendant Christopher C. Fogleman, Associate Circuit Court Judge for Montgomery County, Maryland.[1]  ECF No. 31, at 1.  Plaintiff is a resident of the state of Maryland.  ECF No. 31, at 7.  Defendant is an Associate Judge of the

---

[1] Unless otherwise stated, all facts in the Background are from the Second Amended Complaint. Because the case is currently before the Court on Defendant's Motion to Dismiss, the Court accepts all well-pled allegations from the Complaint as true for the purpose of deciding the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Circuit Court for Montgomery County, having served in that capacity since 2019.  ECF No. 31, at 7.

In June 2016, upon the death of Plaintiff's father, Dinesh O. Parikh ("Decedent"), Plaintiff's ex-wife, Oxana M. Parikh ("Ms. Parikh"), became the personal representative of Decedent's estate.  ECF No. 31, at 2; ECF No. 32-4, at 1.  On July 11, 2016, Decedent's daughter, Tina Parikh-Smith ("Ms. Smith"), filed a Petition for the Removal of Personal Representative and for Appointment of Successor Personal Representative.  ECF No. 32-4, at 1.  After a hearing on the matter, Judge Gary E. Bair, Associate Judge of the Circuit Court for Montgomery County, Maryland, sitting as the Orphans' Court for Montgomery County, Maryland, issued an order removing Ms. Parikh as the personal representative of Decedent's estate and appointing a disinterested third-party personal representative, Lynn C. Boynton ("Ms. Boynton").  ECF No. 31, at 11; ECF No. 32-4, at 1-2.

Following years of extensive litigation over the Decedent's estate, Defendant signed an order on November 13, 2023, declaring Plaintiff to be a vexatious litigant.  ECF No. 31-1, at 14. The order permanently enjoins Plaintiff from filing "any pleading, motion, or other paper," relating to the Decedent's estate, or "filing in the Orphans' Court for Montgomery County, Maryland or the Circuit Court for Montgomery County, Maryland any new action relating to the [Decedent's estate], without first obtaining leave of the Court by obtaining permission from the Administrative Judge or their designee."  ECF No. 31-1, at 14-15.  Plaintiff appealed this order to the Appellate Court of Maryland.  ECF No. 32-2, at 43.

Throughout the underlying estate matter and the pending case, Plaintiff has maintained that Decedent's estate settlement is unlawful because: 1) the personal representative, Ms. Boynton,

used a different last name in prior court proceedings; and 2) the Decedent's spouse unlawfully benefited from the estate. ECF No. 31, at 10.

Plaintiff filed this Second Amended Complaint against Defendant on April 21, 2025, alleging that Defendant denied Plaintiff access to the state courts, retaliated against Plaintiff to protect those within the Defendant's "inner circle," and deliberately fabricated, suppressed, omitted, altered or destroyed evidence in violation of 42 U.S.C. § 1983. ECF No. 31, at 16, 21, 23. Plaintiff also alleges that he has been treated differently than others with whom he is similarly situated due to intentional or purposeful discrimination in violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution. ECF No. 31, at 31-32. Plaintiff has sued Defendant in his individual capacity seeking compensatory and punitive monetary damages. ECF No. 31, at 36-37. Plaintiff also seeks a constructive trust over all attached or seized funds from his personal bank account. ECF No. 31, at 28, 37.

On May 5, 2025, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim. ECF No. 32. Plaintiff filed a Response on June 2, 2025. ECF No. 38. This Court held a Motions Hearing on July 29, 2025, regarding Defendant's Motion to Dismiss. ECF No. 44. Plaintiff filed a Supplement to his Response in Opposition to Defendant's Motion to Dismiss on August 6, 2025. ECF No. 46.

## STANDARD OF REVIEW

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "The burden of establishing subject matter jurisdiction" lies with "the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). Motions relying on

Rule 12(b)(1) share the same standard as motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024) ("[W]here the defendant contends that the allegations in the complaint are insufficient to confer subject-matter jurisdiction, the district court assesses the motion under the same standard as one brought under Rule 12(b)(6)."). Accordingly, to survive a motion to dismiss for lack of jurisdiction, the complaint must "set forth facts," accepted as true, upon which the court can conclude that "jurisdiction is proper."[2] *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must "draw[] all reasonable factual inferences . . . in the plaintiff's favor." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017). The plaintiff must provide more than "a formulaic recitation of the elements of a cause of action," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); mere legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In assessing a 12(b)(1) motion, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."[3] *Stahlman v. United States*, 995 F. Supp. 2d 446, 451 (D. Md. 2014) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)); *see also Durden*, 736 F.3d at 300.

## ANALYSIS

---

[2] "A defendant" can also "contest subject matter jurisdiction" through an alternative path: "by attacking the veracity of the allegations contained in the complaint." *Durden*, 736 F.3d at 300. "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Defendants do not challenge the accuracy of Plaintiff's allegations; accordingly, the Court applies the standard for a facial challenge.

[3] For this reason, the Court considers the attachments to Defendant's Motion, ECF Nos. 32-2 to 32-7, in its analysis.

Defendant moves for dismissal on numerous grounds, including lack of subject-matter jurisdiction, abstention, and failure to state a claim. ECF No. 32. For the reasons stated below, *Younger* abstention, absolute judicial immunity, and the *Rooker-Feldman* doctrine apply, limiting the Court's jurisdiction. However, Defendant has failed to show that Eleventh Amendment immunity bars suit against him. Because the Court lacks subject-matter jurisdiction and must abstain from adjudicating Plaintiff's claims, it will not address the merits of Plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 93-95 (1998) (explaining that a federal court may not issue a decision on the merits if it lacks subject-matter jurisdiction).

I.    ***Younger* Abstention Cautions Against Federal Intervention.**

"[A]bstention is an exception to the general rule that federal courts must decide cases over which they have jurisdiction." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). Specifically, *Younger* abstention "counsels federal-court abstention when there is a pending state proceeding." *Moore v. Sims*, 442 U.S. 415, 423 (1979). The doctrine acknowledges that "state courts are fully competent to decide issues of federal law," *Harper v. Pub. Serv. Comm'n W. Va.*, 396 F.3d 348, 355 (4th Cir. 2005), reflecting a "strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore*, 442 U.S. at 416.

The Supreme Court in *Sprint Commc'ns, Inc. v. Jacobs* identified the three circumstances in which *Younger* abstention applies: (1) "ongoing state criminal prosecutions," (2) "certain 'civil enforcement proceedings,'" and (3) "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" 571 U.S. 69, 78 (2013) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). If a case falls into one of the three categories outlined above, a federal court

should consider if there is (1) an "ongoing state judicial proceeding," that (2) "implicate[s] important state interests," and (3) provides "an adequate opportunity . . . to raise constitutional challenges." *Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Even if one of the *Sprint* categories applies and the three *Middlesex* factors weigh in favor of abstention, there are exceptions to the court's duty to abstain. The Court may maintain jurisdiction if Plaintiff can show (1) "bad faith or harassment" by state officials responsible for the prosecution; (2) a state statute that is "flagrantly and patently violative of express constitutional prohibitions"; or (3) other "extraordinary circumstances" or "unusual situations". *Younger v. Harris*, 401 U.S. 37, 49-64 (1971).

*Younger* abstention is appropriate in the instant matter. First, Plaintiff's appeal of the vexatious litigant order constitutes a pending civil proceeding uniquely involving the state court's interest in performing its judicial functions. *See Strickland-Lucas v. Citibank, N.A.*, ELH-16-0805, 2017 WL 2876475, at *7 (D. Md. July 6, 2017) ("[c]ases in the third category generally involve a state's contempt process or a state court's efforts to enforce its own order or judgment"); *Accohannock Indian Tribe v. Tyler*, SAG-21-02550, 2021 WL 5909102, at *13 (D. Md. Dec. 14, 2021) (assuming the proceedings on appeal in Maryland Circuit Court constitute an ongoing state judicial proceeding); ECF No. 31-2, at 2; ECF No. 32-2, at 38, 43; ECF No. 32-5. Plaintiff appealed the vexatious litigant order to the Appellate Court of Maryland on November 14, 2023. ECF No. 32-2, at 38; ECF No. 32-5, at 1. The appeal is still pending with the Appellate Court of Maryland. ECF No. 32-2, at 43. Additionally, the case implicates an important state interest – its ability to effectively manage its judicial system and conserve limited resources. *See Harper*, 396 F.3d at 352 ("enforcing state court judgments cuts to the state's ability to operate its own judicial system, a vital interest for *Younger* purposes"); *Washburn v. McCarthy*, No. 149491-FL, 2021 WL

4477449, at *8 (Md. Ct. Spec. App. Sept. 30, 2021) (affirming a vexatious litigant order where "[s]uch frivolous and vexatious litigation unquestionably imposed an unnecessary and undue burden on the courts").  "[W]here vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'"  *Middlesex*, 457 U.S. at 432 (quoting *Moore*, 442 U.S. at 426).

Finally, Maryland state courts provide an adequate opportunity for Plaintiff to raise his constitutional claims.  *See Balunsat v. Cecil Cnty. Gov't*, RDB-12-0360, 2012 WL 6681914, at *6 (D. Md. Dec. 21, 2012) ("the Maryland state judicial system may address and decide issues of constitutional and other federal law"); *Freed v. Worcester Cnty. Dept. of Soc. Servs.*, 69 Md. App. 447, 455-57 (Md. Ct. Spec. App. 1986) (adjudicating an appeal of an access to courts claim under 42 U.S.C. § 1983); *Mayor and City of Council of Balt. v. Guttman*, 190 Md. App. 395, 403-409 (Md. Ct. Spec. App. 2010) (deciding the plaintiff's federal First Amendment retaliation claim). The Fourth Circuit has held that when a Plaintiff is "able to present their claims and have them addressed in state court" federal intervention is inappropriate.  *Nivens v. Gilchrist*, 444 F.3d 237, 244 (4th Cir. 2006).

Plaintiff alleges that the Court should nonetheless maintain jurisdiction over the case because Defendant has used "false identities to misdirect this [court], inject[ed] fake wives into this federal matter and in orphans' court, conceal[ed] and fail[ed] to report to law enforcement counterfeit documents that [are] on [their] face a 'cut-and-paste' job."  ECF No. 46, at 12. Allegedly, these acts are intended to "misappropriate millions of dollars from decedents, their offspring, and their designated 'legatees.'"  *Id.*

Even accepting all well-pled allegations from the Second Amended Complaint as true, these circumstances do not justify the Court's continued jurisdiction.  "Neither the Supreme Court

nor [the Fourth] Circuit has delineated an exhaustive list of situations that rise to the level of extraordinary circumstances" but Fourth Circuit decisions have indicated that the "path to extraordinary circumstances is exceedingly narrow." *Air Evac EMS, Inc.*, 37 F.4th at 99-100. The personal representative's use of a different last name in prior court proceedings does not constitute the sort of extraordinary circumstances that would eliminate the court's duty to abstain, ECF No. 31-6, at 2; nor are Plaintiff's allegations that the Decedent's allegedly invalid spouse benefited from the estate. ECF No. 31, at 10. Under Fourth Circuit precedent, there must be actual impediments to the state forum's ability to allow the plaintiff to litigate their federal claim, which Plaintiff has not alleged. *Air Evac EMS, Inc.*, 37 F.4th at 102 (finding extraordinary circumstances where state Commissioner's actions presented an actual impediment to West Virginia's ability to address the applicable federal issue); *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993) (finding extraordinary circumstances where Congress has passed legislation to "define[] an entire category of cases in which 'extraordinary circumstances' exist to justify federal court intervention"); *Simopoulos v. Va. State Bd. of Med.*, 644 F.2d 321, 327-29 (4th Cir. 1981) (explaining that the bad faith and patent unconstitutionality exceptions to *Younger* abstention apply "if the state procedure fails to provide the federal plaintiff with an adequate opportunity to litigate in the state forum").[4]

## II.    Absolute Judicial Immunity Applies.

Absolute immunity applies to "officials whose special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Judges

---

[4] Plaintiff notes that when *Younger* abstention applies, a stay of the case, as opposed to dismissal with prejudice is the proper course. ECF No. 46, at 4-5 (citing *Adams Outdoor Advertising Limited Partnership v. Beaufort County*, 105 F.4th 554, 559-60 (4th Cir. 2024)). This may have been an appropriate course were it not for absolute immunity or the applicability of the *Rooker-Feldman* doctrine.

fit squarely within this category of officials who are entitled to immunity from suits for money damages in their individual capacities. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harmon v. Md. Dep't of Health & Mental Hygiene*, ELH-13-605, 2013 WL 867992, at *4 (D. Md. March 7, 2013). Judicial immunity is immunity from suit, not just the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity supports the principle that a "judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles*, 502 U.S. at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)).

There are two circumstances in which a plaintiff may overcome a judge's assertion of judicial immunity. First, "a judge is not immune from liability for nonjudicial actions." *Mireles*, 502 U.S. at 11-12. Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

Defendant is an Associate Circuit Court Judge for Montgomery County, Maryland entitled to judicial immunity. ECF No. 31, at 1. Plaintiff challenges an order Defendant entered in Orphans' Court. ECF No. 31-1, at 14. Defendant's order satisfies prong one, as it is the prototypical judicial act for which a judge is entitled to absolute judicial immunity from individual liability for damages. *Harmon*, 2013 WL 867992, at *4 (holding plaintiff's challenge to an Orphans' Court judgment to be a "judicial" act).

Plaintiff nonetheless maintains that judicial immunity does not apply, alleging that Defendant acted without jurisdiction. Plaintiff argues that the Orphans' Court lacked jurisdiction to issue the injunction regarding filings in Circuit Court, reasoning that Maryland law does not grant such broad authority to the Orphans' Court and that a separate action should have been initiated in Orphans' Court before Defendant issued the injunction. ECF 38, at 12-18.

Defendant's arguments fail to satisfy the high standard required to defeat an assertion of judicial immunity.  Judges are "subject to liability only when [acting] in the 'clear absence of all jurisdiction.'"  *Stump*, 435 U.S. at 356-57 (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Section 2-101 of the Maryland State Code establishes the jurisdiction of the Orphans' Courts over decedents' estates and provides that the Orphans' Court "may conduct judicial probate, direct the conduct of a personal representative, and issue orders that may be required in the course of the administration of an estate of a decedent."  E.T. § 2-102(a).  Section 2-103 gives the Orphans' Court "the same legal and equitable powers to effectuate its jurisdiction, punish contempt, and carry out its orders, judgments and decrees as a court of record with general jurisdiction in equity." E.T. § 2-103.  Contrary to Plaintiff's arguments, Maryland grants the Orphans' Court the authority to issue orders, including injunctions to manage the court's docket.[5]  *See Radcliff v. Vance*, 360 Md. 277, 286 (Md. 2000) (extending the Orphans' Court's jurisdiction to "such matters as are necessarily incident to the exercise of the powers expressly granted to them"); *Kroll v. Fisher*, 182 Md. App. 55, 62 (Md. Ct. Spec. App. 2008) (upholding the Orphans' Court's authority to issue an order for the accounting of a personal representative's management of an estate); *Vangrack, Axelson & Williamowsky, P.C. v. Estate of Abbasi*, 261 F. Supp. 2d 352, 357 (D. Md. 2003) (upholding an Orphans' Court order authorizing estate's personal representative to pay interim

---

[5] Even if it is questionable whether the Orphans' Court had the power to issue the injunction, the Court cannot conclude that Defendant acted in the clear absence of jurisdiction. *See King v. Myers*, 973 F.2d 354, 357 (4th Cir. 1992) ("[T]he scope of the judge's jurisdiction must be construed broadly . . . "); *see also Perlmutter v. Verone*, No. GLH-14-2566, 2015 WL 4757183, at *3 (D. Md. Aug. 11, 2015) (holding that absolute judicial immunity applied where judges were "acting within their respective judicial capacities and jurisdiction in presiding over the Orphan[s'] [C]ourt" and the challenges were to the judge's rulings made while presiding over proceedings relating to the estate matter); *see Harmon*, 2013 WL 867992, at *4 (applying absolute judicial immunity where plaintiff challenged an Orphans' Court judgment concerning a matter relating to a decedent's estate).

attorney fees to law firm); *Willoner v. Davis*, 30 Md. App. 444, 449 (Md. Ct. Spec. App. 1976) (upholding the Orphans' Court's authority to construe statutes); *Kaouris v. Kaouris*, 324 Md. 687, 716 (Md. 1991) (upholding the Orphans' Court's authority to interpret a marital settlement agreement to determine a spouse's entitlement to share in an estate).

Plaintiff also alleges that Defendant crossed out "Circuit" and wrote "Orphans'" to docket the injunction in Orphans' Court, arguing that relabeling the court which issued the order renders the order a non-judicial act. ECF No. 31, at 8. This argument fails; what appears to be an attempt to correct a previously mislabeled document does not change the judicial nature of issuing the order. *Gibson v. Goldston*, 85 F.4th 218, 224 (4th Cir. 2023) ("[i]ssuing an order is a judicial function"); *Harmon*, 2013 WL 867992, at *4 (holding Orphans' Court judgment is a "judicial" act). The relevant inquiry to determine whether an act is "judicial" is the nature and function of the act. *See Stump*, 435 U.S. at 362 (holding there was no merit to the argument that a judge's actions became nonjudicial when he "performed the type of act normally performed only by judges"). Courts look to the "act's relation to a general function normally performed by a judge" to determine whether the act was judicial in nature. *Mireles*, 502 U.S. at 13. Plaintiff is challenging an order Defendant entered in Orphans' Court. ECF No. 31-1, at 14. The accompanying informal action—crossing out "Circuit" and relabeling the document "Orphans"—does not deprive the complete act of its judicial character. *See Forrester v. White*, 484 U.S. 219, 227 (1988) (holding that informal, ex parte proceedings do not render a judge's act to be non-judicial in character). Moreover, Circuit Court Judges in Montgomery County, Maryland may sit as the Orphans' Court, which may explain the mislabeled document. *See Willoner*, 30 Md. App. at 448 ("a judge of the Circuit Court for Montgomery County . . . may also sit as a judge of the Orphans' Court for Montgomery County"); *Vangrack, Azelson & Williamowsky, P.C.*, 261 F. Supp. 2d at n.3 ("the

Orphans' Court in Montgomery County, as a matter of tradition, is known as 'The Circuit Court for Montgomery County Sitting as the Orphans' Court'").

### III.    The *Rooker-Feldman* Doctrine Bars Plaintiff's Case.

The *Rooker–Feldman* doctrine prohibits federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 281 (2005).  The doctrine prohibits "claims that 'seek [ ] redress for an injury caused by the state-court decision itself' because they 'ask[ ] the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)).  "The doctrine derives from 28 U.S.C. § 1257, a federal statute that vests the U.S. Supreme Court—and *only* the United States Supreme Court—with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law." *Harmon*, 2013 WL 867992, at *2 (emphasis added); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983) (holding that "[r]eview of such judgments may be had only in [the Supreme Court]"); *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) (explaining that Congress has not given "lower federal courts . . . any power to review directly cases from state courts").  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiff's Second Amended Complaint requires abstention based on the *Rooker-Feldman* doctrine. Plaintiff's lawsuit "complain[s] of an injury caused by the state-court judgment and seek[s] federal-court review and rejection of that judgment." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). First, each count complains of injury caused by the state-court judgment which enjoined Plaintiff from pursuing further litigation in Orphans' Court and Circuit Court. *Lance v. Dennis*, 546 U.S. 459, 464-65 (2006). Counts I, II, and III allege the order resulted in Plaintiff's deprivation of access to courts, constituted retaliation against Plaintiff, and prevented him from challenging fabricated evidence. ECF No. 31, at 16, 21, 23. Count IV alleges that the order resulted in Plaintiff being "treated differently from others with whom he is similarly situated," in violation of the Fourteenth Amendment. *Id.* at 31-32. Each of these legal claims points to the same source of injury: the Maryland vexatious litigant order. If the state court had not issued this order, Plaintiff would not be enjoined from litigating in Maryland Orphans' and Circuit Courts, and, based on Plaintiff's Second Amended Complaint, there would be no injury. *See Moseley v. Winston*, RDB-18-810, 2018 WL 3740699, at *4-5 (D. Md. Aug. 7, 2018) (applying *Rooker-Feldman* where "all of [Plaintiff's] alleged constitutional injuries stem[med] from [a] child support proceeding" in state court because the requested relief "would render the judgment ineffectual"). Although the category of cases "complaining of an injury caused by the state-court judgment" is narrow, this case falls within it. *Exxon Mobil Corp.*, 544 U.S. at 291.

This is not a case in which "[a] plaintiff's injury at the hands of a third party [was] 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)); *see also Davani*, 434 F.3d at 719-20 (concluding that *Rooker-Feldman* did not apply where Plaintiff lost an employment discrimination

suit in Virginia state court, then raised similar complaints in federal court, because the underlying discrimination caused the harm—not the state court's judgment).  This case differs from the United States Court of Appeals for the Fourth Circuit's decision in *Hulsey v. Cisa*, where the plaintiffs brought suit in federal court seeking relief against the defendants—the opposing parties in the state court proceedings—"for alleged RICO violations, fraud, and abuse of process" stemming from Defendants' conduct in prosecuting several defamation suits in state court.  947 F.3d at 250.  Importantly, the injury in *Hulsey* did not result from the state court judgment, but rather from third parties' allegedly fraudulent actions in pursuing their cases.  *Id.*  Accordingly, although the injuries occurred in the context of the state-court cases, they were "merely enabled" by the state court rulings—not caused by them.  *Id.* at 251.

The vexatious litigant order context in this case differs.  Plaintiff's injury as he frames it— Defendant foreclosing his use of the judicial system—is one and the same with the Maryland court's order resulting in the injunction against him.  *See* ECF No. 31, at 17-22, 24, 33-35 (characterizing the injury to Plaintiff as arising from Defendant's order blocking Plaintiff's access to the courts).  The overwhelming thrust of the Second Amended Complaint and the equal protection count, in particular, is that Plaintiff is complaining of alleged damage from the state court order itself, not the process that led to the order.  *Id.* at 33 (alleging that Defendant's order had the impact of "depriving Plaintiff of his constitutional right to petition Md. courts"); *id.* at 35 ("Any reasonable person would have known that Plaintiff possessed a clearly established constitutional right to basic equal protection . . . [s]uch a basic constitutional question of one's access to courts to seek redress and to petition, to be free from retaliation from exposing those within Defendant's 'inner circle' . . . , as well as to be free from fabricated/omitted evidence . . ."); *id.* at 36 (alleging that Defendant "denied [Plaintiff's] access to courts").  Although there is some

language in Plaintiff's Second Amended Complaint alleging that Defendant conducted the underlying proceedings in a discriminatory manner, *see id.* at 33 ("Defendant created two classes: those within his 'inner circle' who benefit from obtaining unlawful orders and bank seizures using false identities or negotiating leverage of being able to threaten to do so, and unrepresented immigrants who don't receive the same benefit and tactical advantage"), Plaintiff's claims are largely focused on the damage from the vexatious litigant order. *Id.* at 17 (characterizing the injury as the "loss of all rights to challenge" issues in court); *id.* at 20 ("Defendant hindered Plaintiff by entering an injunction that bars Plaintiff from filing anything . . . in orphans' and circuit courts); *id.* at 22 ("Defendant retaliated against Plaintiff by impeding his exposure of corruption and holding liable imposters, barrators, and fraudsters"); *id.* at 24 ("Defendant's use of fabricated evidence deprived Plaintiff of his right to seek redress in Md. courts").  The Court's present conclusion is not unique; this Court has previously held that *Rooker-Feldman* applies in this context.  *See Monbo v. Richmond American Homes of Md., Inc.*, No. 24-cv-2869, 2025 WL 1207384, at *4 (D. Md. April 25, 2025) (holding that *Rooker-Feldman* barred claims in which plaintiff asked the federal district court to stand in for the state appellate court and review state court judge's rulings).

## IV.    Eleventh Amendment Immunity Does Not Bar Suit Against Defendant.

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend XI.  Eleventh Amendment immunity "protects the States, their agencies, and officials . . . acting in their official capacities" from being sued in federal court for money damages without their consent.  *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018); *Adams v. Ferguson*, 884

F.3d 219, 224 (4th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  However, this immunity does not "extend to suits under § 1983 against state officials who are sued in their individual capacities."  *Murphy v. Virginia*, 21-1253, 2022 WL 17484286, at *1 (4th Cir. 2022); *Jordan v. Davis*, ELH-22-1541, 2023 WL 2478862, at *7 (D. Md. March 13, 2023) ("personal capacity suits, which seek to impose individual liability on a government official for an action taken under color of State law, are also not barred by the Eleventh Amendment").

To bring suit under § 1983 against a defendant in his individual capacity, a plaintiff must show that the defendant "acted personally in the deprivation of the plaintiffs' rights."  *Francis v. Maryland*, ELH-21-1365, 2023 WL 2456553, at *18 (D. Md. March 10, 2023) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  Plaintiff asserts that Defendant signed and unlawfully docketed the vexatious litigant order, granting a permanent life-time injunction against Plaintiff.  ECF No. 31, at 7.  Plaintiff alleges that Defendant deprived Plaintiff of his access to the court system, retaliated against him and admitted fabricated evidence, all in in violation of 42 U.S.C. § 1983; and, separately, violated his rights under the Equal Protection Clause of the Fourteenth Amendment.  ECF No. 31, at 16, 21, 23, 31.

Looking to the Second Amended Complaint, Plaintiff brings this action against Defendant "in his individual capacity."  ECF No. 31, at 1.  Courts consider a variety of factors to determine whether a suit is brought against the defendant in their individual capacity, including the types of damages requested, who money is sought from, and who is being sued.  The inquiry to determine whether an official is being sued in his individual capacity is "best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).  While "the mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action,"

16

*Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001), when a plaintiff states in their complaint that he is bringing an individual capacity suit, the court must ask whether anything "in the remainder of the complaint, or in the record, undermines [the] clear statement" showing that the state is the real party in interest. *Adams*, 884 F.3d at 225. Plaintiff seeks compensatory and punitive monetary damages. ECF No. 31, at 1. The Fourth Circuit has held that a plaintiff's request for compensatory damages in a suit brought under § 1983 "may itself be evidence that a state officer is being sued in their personal capacity 'since such relief is unavailable in official capacity suits.'" *Gibbons v. Gibbs*, 99 F.4th 211, 216 (4th Cir. 2024) (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)). Plaintiff also seeks "a constructive trust over all attached/seized personal bank account funds," which does not require payment of state funds. ECF No. 31, at 37; *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (observing that the Eleventh Amendment bars suits where the relief sought "requires payment of state funds"). Moreover, Plaintiff specifically asserts claims against Defendant, not the current judge presiding over the underlying estate matter, even though Defendant has withdrawn from his position as Circuit Court Judge in the underlying matter. ECF No. 31, at 9; *cf. Graham*, 473 U.S. at 166 n.11 ("In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.").

Defendant, in response, relies on *Martin v. Wood* to argue that the Court need not defer to Plaintiff's characterization of the lawsuit as an individual-capacity suit. 772 F.3d 192 (4th Cir. 2014); ECF No. 32-1, at 14. In *Martin*, the Fourth Circuit established a five-factor test to "identify the real, substantial party in interest." *Martin*, 772 F.3d at 196. However, the Fourth Circuit has declined to apply *Martin*'s five factor test to claims brought under 42 U.S. § 1983. *Adams*, 884 F.3d at 226 ("We refuse to apply to § 1983 claims these factors, which we articulated for use in

considering claims under a very different statute, and which would undermine the very purpose of § 1983."). The Fourth Circuit has held that applying the *Martin* factors, which focus on the official character of defendant's actions, to section § 1983 claims would "absolutely immunize state officials from personal liability for acts within their authority and necessary to fulfilling governmental responsibilities." *Adams*, 884 F.3d at 226 (citing *Hafer*, 502 U.S. at 28). Thus, based on the information available at this stage of the proceedings, the Court cannot conclude that Eleventh Amendment immunity applies.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that: Defendant's Motion to Dismiss the Second Amended Complaint (ECF No. 32) is granted. This case shall be closed.

So ordered.

Date:  January 23, 2026                                   _____/s/_____
                                                                          Ajmel A. Quereshi
                                                                          United States Magistrate Judge