Mr. Namish Parikh, Plaintiff, *pro se*
5301 Westbard Circle, Apt.# 407
Bethesda, Md 20816
Cell: 202-701-3834



USDC- GREENBELT
'26 FEB 18 PM 12:08

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NAMISH PARIKH, | ) | |
| | ) | Civil No. 24-cv-3627-AAQ |
| Plaintiff | ) | |
| v. | ) | Hon. Judge Quereshi |
| | ) | |
| CHRISTOPHER C. FOGLEMAN, | ) | Plaintiff's Rule 59(e) |
| | ) | Motion for Reconsideration; and |
| Defendant | ) | Exhibits One & Two |

### *PLAINTIFF'S RULE 59(e) MOTION FOR RECONSIDERATION*

Plaintiff, Mr. Namish Parikh, respectfully requests Rule 59(e) Reconsideration because this Court, in my opinion, erred regarding *Younger*, *Rooker-Feldman*, and conflated judicial immunity with jurisdiction – Defendant not only failed to meet his burden on "each" function, but also did not argue immunity on a function-by-function basis.

### Table of Contents

I.    Standard of Review: ........................................................................2
  A.    Rule 12(b)(1)........................................................................2
  B.    Rule 59(e)............................................................................4
II.   Discussion............................................................................6
  A.    Some call it a "Silver Bullet" ........................................6
  B.    Subpoenas Implicitly Denied ...........................................9
  C.    Merits Conflated with Jurisdiction...............................10
  D.    Criminal Referral Still Pending.....................................12
  E.    Memorandum Opinion (ECF No. 47) ............................13
    1.    Wrong Caption ............................................................13
    2.    Plaintiff's ex-wife is not "Oxana M. Parikh" ............13

3.    *Younger* never applied to *in rem* cases or when not seeking injunction ....................14

4.    Absolute Judicial Immunity Does Not Apply ...........................................17

5.    *Rooker-Feldman* Does Not Bar Plaintiff..................................................18

6.    Should be Agnostic towards prior district court decisions...........................22

Request for Hearing and Renewed Request for Subpoenas ........................................30

Certificate of Service ...............................................................................................30

## I.    Standard of Review:

## A.  Rule 12(b)(1)

Under Rule 12(b)(1), a party may seek dismissal based on a lack of subject-matter jurisdiction. Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case, and must be decided **before** a determination on the merits of the case. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479-80 (4th Cir. 2005).

A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, a court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant may challenge subject-matter jurisdiction facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a **facial** challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. *Id.* The court then effectively affords plaintiff "the same procedural protection as he would receive under a Rule

12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

In a **factual** challenge, a defendant asserts that jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. *Id.* at 192-93.

The Supreme Court cautioned that Rule 12(b)(6) motions to dismiss should not be conflated with Rule 12(b)(1) motions:

> "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." 2 J. Moore et al., *Moore's Federal Practice* §12.30[1], p.12-36.1 (3d ed. 2005). Judicial opinions, the Second Circuit incisively observed, "often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim." *Da Silva*, 229 F.3d, at 361. We have described such unrefined dispositions as "drive-by jurisdictional rulings" that should be accorded "no precedential effect" on the question whether the federal court had authority to adjudicate the claim in suit.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006).

Our Circuit has stated that "subject matter jurisdiction of a federal court is not generally resolved by concluding that plaintiff has failed to allege an element of a federal cause of action or that plaintiff might not be able to prove an element of a federal cause of action." *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 452 (4th Cir. 2012).

In close cases where it is unclear whether a question is jurisdictional, our Circuit errs on the side of treating the question as non-jurisdictional. "A district court should **assume jurisdiction** and assess the merits of the claim when the relevant facts – for jurisdictional and merits purposes – are inextricably intertwined." *Kerns*, 585 F.3d at 195. If satisfaction of an essential element of a

claim for relief is at issue, however, the jury is the proper trier of contested facts. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 150-151 (2000).

Our Circuit, when reviewing an order dismissing an action for lack of subject matter jurisdiction, "reviews conclusions of law *de novo* and findings of fact for clear error." *Cunningham v. Gen. Dynamics,* 888 F.3d 640, 645 (4th Cir. 2018). To conclude that a district court's factual finding is clearly erroneous, the reviewing court must be left with the definite and firm conviction that a mistake has been committed. *Id.*

A district court abuses its discretion when it "rest[s] its decision on a clearly erroneous finding of a material fact, or misapprehend[s] the law with respect to underlying issues in litigation." A court also "abuses its discretion when it makes an error of law, or when it ignores unrebutted, legally significant evidence." *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs,* 127 F.4th 457, 466 (4th Cir. 2025).

## B. Rule 59(e)

The purpose of Rule 59(e) is to "give[] a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis,* 590 U.S. 504, 508 (2020). Allowing a district court this opportunity helps to "spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. v. American Nat'l Fire Ins.,* 148 F.3d 396, 403 (4th Cir. 1998).

A motion filed under either Rule 60(b) or Rule 59(e) should be analyzed only under Rule 59(e) if it was filed no later than 28 days after entry of an adverse judgment and seeks to correct that judgment. *Robinson v. Wix Filtration,* 599 F.3d 403, 411 (4th Cir. 2010).

Judgment and Opinion were entered on January 23, 2026. ECF Nos. 47 & 48. The 28th day after judgment is February 20, 2026. However, because Plaintiff is *pro se* and a non-ECF filer,

three additional days are provided for mailing. Rule 6(d) and Rule 5(b)(2)(C) (mail). Thus, due date for a timely 59(e) motion is February 23, 2026.[1]

On Feb. 13, 2026, in *Guzman v. Acuarius Night Club*, CA4 Appeal No. 24-1555, **Published**, CA4 held:

> There is no requirement, however, that the plaintiffs raise their argument in a post-judgment motion. Acuarius' argument overlooks the fact that the alleged error here was committed by the district court when entering judgment and taking an appeal from that judgment is all that is necessary to preserve the error for appeal.

Similarly, in *Stevenson v. City of Seat Pleasant*, 743 F.3d 411 (4th Cir. 2014), CA4 recognized that technically differing standards of review for summary judgment and 59(e) apply, *id.* at 416; however, since there is a "clear intent to review summary judgment order itself, and thus our review is *de novo*." *Id.* Put simply, "we will review the district court's summary judgment ruling and **not** the order denying the subsequently filed Rule 59(e) motion; accordingly, our review is *de novo*." *Id.* at 421.

Section 1983 does not categorize a defendant's qualified or absolute immunity as a jurisdictional question. On the contrary, to state a plausible claim pursuant to §1983, the complaint must allege plaintiff suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States by a person acting under color of law. *West v. Atkins*, 487 US 42, 48 (1988). Plaintiff met his initial burden.

Moreover, Amed.Comp. and reconsideration are driven by my desire to regain stolen ~$2M. *See*, Crim. Law §8-301(c). Rule 59(e) provides this Court an opportunity to rectify its own errors and spare *pro se* Plaintiff the burden of an unnecessary appellate proceeding.

---

[1] Appeal is tolled until resolution of Rule 59(e) motion. Fed.R.App.P. 4(a)(4)(A)(vi). Any subsequent notice of appeal from 59(e) disposition is adequate to support review of underlying order to dismiss. *Brown v. French*, 143 F.3d 307, 310-11 (4th Cir. 1998).

## II.   Discussion

### A. Some call it a "Silver Bullet"

"[J]udges are not protected if they act in the clear absence of all jurisdiction over the subject-matter or when they engage in nonjudicial acts." *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023).

Using a false identity in Maryland is criminally prohibited. Crim. Law, §8-301(c) ("A person may not knowingly and willfully assume the identity of another, including a **fictitious** person: (1) to avoid identification, apprehension, or prosecution for a crime; or (2) with fraudulent intent to: (i) get a benefit, credit, good, service, or other thing of value;").

Nonetheless, a person with the legal name of "Lynn C. Pendleton" openly and notoriously uses a false identity in orphans' and circuit courts. This was clearly established during the hearing.[2] In federal and Maryland courts, one must use one's true and legal name in official proceedings. *Hardy v. Hardy*, 269 Md. 412, 415 (1973) ("In absence of a statute to the contrary, a person may adopt any name by which he wishes to become known, as long as he does so consistently and nonfraudulently."); *Stuart v. BoE*, 266 Md. 440, 449 (1972) (must use one legal name "exclusive[ly], consistent[ly], nonfraudulent[ly]"). Aside from criminal, there are also ethical constraints.

This makes perfect sense. Operating under a fictitious identity deprived both orphans' and circuit courts of jurisdiction over an imposter, lacking a valid appointment. Regardless if Defendant alleges to have acted as orphans' or circuit court, he lacked jurisdiction over an imposter using a false identity. *Trump v. United States*, 144 S.Ct. 2312, 2351 (2024) (Justice Thomas concurring) ("Whether the Special Counsel's office was 'established by Law' is not a trifling technicality.").

---

[2] Transcripts have been requested and paid for; but I could only afford cheapest option. Hopefully, transcripts will be delivered in time for Reply. Meanwhile, I call this Court's attention to SCOTUS Cert. Pet. No. 24-283, wherein Lynn C. Pendleton signed and printed her true legal name on her Waiver Form. *Also see*, check at p.29, *infra*.

Justiciability or "Standing" rests on a legal interest founded on a statute that confers a privilege. *Long Green Valley Ass'n v. Bellevale Farms*, 205 Md.App. 636, 652 (2012).

Pendleton must have had a "legal interest such as one…founded on a statute[.]" *25th Street v. Baltimore*, 137 Md.App. 60, 72 (2001). Since Pendleton lacked standing because she was never appointed, nor could have under a fictitious and false identity, a criminal offense, then there was no remedy available to her, inasmuch as she had suffered no justiciable harm that could be redressed. *Dorsey v. Bethel AME Church*, 375 Md. 59, 70 (2003) (standing issue "may always be noticed by the appellate court.").

In fact, Defendant was duty-bound to ensure that the party before him and petitioning, Pendleton, had standing – especially given potential constitutional deprivation and loss of ~$2M. Lack of standing deprived both orphans' and circuit courts of jurisdiction. Defendant may unwisely retort that if Pendleton lacks "standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974). Rather, the solution is to enforce criminal laws and lawfully appoint a person of moral integrity to function as fiduciary. "As Justice Scalia memorably said, … **What's it to you?**" *FDA v. Alliance for Hippocratic Medicine*, 144 S.Ct. 1540, 1554 (2024). If Pendleton seeks to get rich by misappropriating millions of dollars, over $2M from Plaintiff alone, then orphans' or circuit courts are not the forum for those criminal activities, and if Defendant voluntarily aids and conceals Pendleton's criminal activities, then he forfeits judicial immunity because he had no jurisdiction. *Alliance for Hippocratic Med.*, 144 S.Ct. at 1565 ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."). Maryland Sup.Ct. agrees.

In Maryland, lacking a valid appointment under one's true legal name results in lack of standing, which in turn produces a void judgment, which is unenforceable. A "void judgment is from its inception a complete nullity and without legal effect." *Finch v. LVNV Funding*, 212 Md.App. 748, 761, *cert. denied*, 435 Md. 266 (2013). Defendant's pre-filing injunction is void and unenforceable, and can't serve as predicate for this Court's dismissal order analysis.

Judgments are void in various circumstances; for example, judgments obtained by non-lawyers engaged in unauthorized practice of law, *Turkey Point Prop. Owners' Ass'n. v. Anderson*, 106 Md.App. 710 (1995), a complaint filed in the name of a corporation that has forfeited its corporate charter, *Stein v. Smith*, 358 Md. 670 (2000), or a "judgment obtained by an unlicensed collection agency[.]" *Finch*, 212 Md.App. at 759. "[W]here the invalidity appears upon the face of the record[,]" i.e., fictitious name Boynton, it's "not entitled to enforcement[.]" *Finch*, 212 Md.App. at 768. Defendant knowingly and with intent uses fictitious identity to conceal theft.

Lack of standing, lacking valid appointment, using fictitious identity, violation of criminal law, are individually or collectively, a defect in fundamental jurisdiction in either orphans' or circuit courts. Defendant was required to dismiss Pendleton's petition for lack of subject-matter jurisdiction, with criminal referrals. Having acted notwithstanding a lack of fundamental jurisdiction, stripped Defendant of any feigned claim of immunity in either orphans' or circuit court.[3]

On Feb. 6, 2026, CA4 decided *Natl. Assoc. of Diversity Officers in Higher Edu. v. Trump*, **PUBLISHED**, Appeal No. 25-1189. Vacating and remanding to USDC-MD, CA4 held that

---

[3] *Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause").

"plaintiffs lack standing to challenge the Enforcement Threat Provision." Slip at 11. Since plaintiffs lack standing, "[s]o [too] we lack jurisdiction to hear plaintiffs' constitutional claims related to the Enforcement Threat Provision." Slip at 12.

## B. Subpoenas Implicitly Denied

On June 23, 2025, Plaintiff attempted to procure 2 subpoenas, ECF No. 42. Inexplicably, Local Rule 102.3 does not restrict Defendant from issuing subpoenas; it unfairly singles out Plaintiff. My hands were tied, notwithstanding a clear indication that I intended to prove lack of fundamental jurisdiction to defeat feigned immunity. Here is excerpt from ECF No. 42 at 1:

> Defendant clinches pearls when he suggests that "Ms. Boynton" properly petitioned and argued for an injunction against Plaintiff. Plaintiff intends to prove that "Mrs. Pendleton" is a barrater stirring up trouble in an estate matter wherein she has no interest or standing – she was never appointed.[1]

Notwithstanding Plaintiff's clear intention and Defendant's written consent to subpoenas, I was nonetheless prevented from presenting my evidence by this Court's error in not issuing requested and consented to subpoenas. This Court states that "Lynn C. Boynton" was appointed, citing ECF No. 31 at 11. *See*, ECF No. 47 at 2. This misstates Amend.Comp. which stated, "Defendant hindered and frustrated Plaintiff's truthful and non-delusional challenge to 'Pendleton' never being appointed, nonetheless operates under a false identity, 'Lynn C. Boynton,' to misappropriate estate assets and seize Plaintiff's personal bank accounts, aided by Defendant." ECF No. 31 at ¶73. This Court did not accept allegations as true. I specifically requested Pendleton to produce:

> All Estate No. W87973 Records; All retainer Agreements; All emails and correspondences regarding Estate of Dr. Dinesh O. Parikh - sent and received; Your current valid Real Maryland Driver's License, United States Passport, Social Security Card; Estate's 2016 Tax Returns (state and federal); "Letters of Administration" (original and updated) issued by Register of Wills; Dept. of Homeland Security Report - regarding "Neela Parikh;" All records regarding civil 425847-V; and, Your Marriage Certificate from 2007.

Her Real Driver's License and Passport would have conclusively established her true identity. Her failure to produce a valid appointment letter under her real identity would have established that she is a fraudster, and Defendant lacked fundamental jurisdiction to entertain her petition, either feigning as orphans' or circuit court. Using fictitious names to misappropriate almost $2M of my personal funds is a crime. "[T]rial judges are presumed to know the law and apply it in making their decisions." *United States v. Ali*, 991 F.3d 561, 570 (CA4 2021). This Court erred in implicitly denying my subpoenas on a threshold contested issue, which should be resolved by jury.

Plaintiff's request for subpoenas was highly relevant and on-point to a central contested issue. Implicit denial of subpoenas was crucial to issue of Defendant's feigned claim of immunity. This Court erred by forbidding inquiry, even after Defendant consented. This is akin to a *Brady* violation, not by the prosecution, but by a court. *Cf.* ECF No. 31 at ¶115 ("Moreover, 'Pendleton' was never appointed[.]").

Defendant knows the laws and made a deliberate decision to conceal Pendleton's lack of appointment and his lack of fundamental jurisdiction over an imposter. This behavior should not be rewarded – criminal referral to USA's office will make an example of Defendant.

### C. Merits Conflated with Jurisdiction

In ECF No. 47, this Court stated: "Because the Court lacks subject-matter jurisdiction and must abstain from adjudicating Plaintiff's claims, it will not address the merits of Plaintiff's claims."

In *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972), overruled on other grounds, *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995), plaintiff therein brought a §1983 action. The defendant therein sought to dismiss for failure to state a claim. *Id.* at 2 ("The court is here limited to deciding

whether the complaint states a cause of action."). Although *McCray* does not cite Rule 12(b)(6), it can be inferred from the "failure to state a claim" language.

In *King v. Myers*, 973 F.2d 354, 355 (4th Cir. 1992), CA4 made clear that a motion to dismiss on judicial immunity must be under Rule 12(b)(6). "Magistrate Myers filed a motion to dismiss King's complaint for failure to state a claim on which relief can be granted, pursuant to…12(b)(6), on the ground that Magistrate Myers was acting in her capacity as a judicial officer and is thus immune from liability for a suit for monetary damages." *Id.*

ECF No. 47 dismissed for absolute immunity on jurisdictional grounds. But, absolute immunity is an affirmative defense to be raised and analyzed under Rule 12(b)(6), **not** 12(b)(1).

Recently, in an **unpublished** opinion, *Weaver v. Walgreen Co.*, CA4 Appeal No. 23-1763, April 8, 2025, Circuit Judge Gregory stated: "12(b)(6) motion required an analysis of the elements, as no jurisdictional argument nor affirmative defense was before the court. Without such an analysis, we have no understanding of the court's basis for dismissing the §1981 claim—or if it even meant to do so—before purportedly closing the case. Thus, it cannot be said that the district court 'rul[ed] on' Weaver's §1981 claim."

Conflating Rule 12(b)(1) with 12(b)(6) is described as "drive-by jurisdictional rulings[.]" *See, Arbaugh, supra.* Since Defendant "challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards---such as discovery---that would apply were the plaintiff facing a direct attack on the merits." *Kerns*, 585 F.3d at 193.

In *Lowy v. Daniel Defense*, Feb. 11, 2026, CA4 Appeal No. 24-1822, **PUBLISHED**, CA4 held that after a finding of lack of jurisdiction, the district court "impermissib[ly]" ruled that plaintiffs' "claims are barred by the PLCAA." Slip at 5. CA4 cautioned district courts that they do "not

possess a roving writ to gratuitously decide an interesting…issue" by conflating 12(b)(1) with 12(b)(6). Slip at 39. Another problem is this Court's dismissal with prejudice. *Cf.* Slip at 41 n.15.

This Court acted *ultra vires* by reaching the merits of the immunity defense, *id.* at 42, after forbidding inquiry into jurisdictional issue and laying as predicate a void and unenforceable Defendant's order. *Cf.* Slip at 34 (district courts "cannot always expect plaintiffs to provide robust evidentiary support for their allegations at the pleading stage because…that information may not be available to the plaintiffs before discovery").

### D. Criminal Referral Still Pending

Institutional interests transcend interests of any party before federal courts. Defendant's brazen use of a fake-wife, counterfeit document, using void and unenforceable order, and concealing false identities to misappropriate ~$2M of my personal funds should not go unpunished. In ECF No. 43 at 4, I requested criminal referral ("refer such a complaint to the United States Attorney directly"), and at 9, n.10 ("utilizing the forensic/counterfeit labs/experts of the FBI"). *Accord, U.S. v. Shaffer Equip.*, 11 F.3d 450, 457 (4th Cir. 1993) ("Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the [judicial] process.").

Defendant knew Crim. Law, §8-301(c) and with intent and purpose concealed and aided Pendleton's crime of misappropriating over $2M of my personal funds using "fictitious" identities with "fraudulent intent" to "get" $2M, with a void and unenforceable order. Defendant, with purpose and intent, barred me from exposing Pendleton's crimes, knowing his lack of fundamental jurisdiction over a barrator/fraudster would defeat his feigned claim of judicial immunity.

"[I]t is unmistakably clear from the face of the complaint that it sufficiently alleges that he was barred access to the courts. This denial of a constitutional right of **momentous importance** is

redressable under section 1983." *McCray*, 456 F.2d at 6. What avail is it to Plaintiff to arm him with a panoply of constitutional rights if, when he is "robbed" and seeks to vindicate his rights, the courtroom door is hermetically sealed against him by the "robber's friend?" *Please see attached*, **Exhibit One** (press release from U.S.A's Office, E.D.MI) ("a sitting judge and a local attorney, were charged for their roles in a years-long scheme").

### E. Memorandum Opinion (ECF No. 47)
### 1. Wrong Caption

Plaintiff sued Defendant "Christopher C. Fog**le**man," **not** "Christopher C. Fog**el**man." *See,* ECF No. 47 at 1. Inexplicably, the opinion, after caption, identifies Defendant as "Christopher C. Fog**le**man." *Id.* Put simply, an unsued and unnamed Defendant prevailed on a motion to dismiss. *Parikh v. Fog**le**man*, is still undecided. This may be a first impression issue for CA4. SCOTUS previously ruled on something somewhat different – a mistake by a party in notice of appeal. *See, Sanabria v. United States*, 437 U.S. 54, 67 n.21 (1978) ("A mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced.").

Plaintiff cannot find a situation where a USDC used wrong caption to dismiss a case. Interestingly, why hasn't Defendant come forward with his own request to correct caption?

### 2. Plaintiff's ex-wife is not "Oxana M. Parikh"

ECF No. 47 at 2, states, "Plaintiff's ex-wife, Oxana **M.** Parikh ('Ms. Parikh')[.]" Unlike Defendant's use of fraudulent identities in this Court, Plaintiff would like to correct this error by stating that Plaintiff's ex-wife and mother of his son is "Ms. Oxana **N.** Parikh." This Court can either take my word or look at docket report 8:22-cv-00110-PX.[4]

---

[4] Even though I do not have transcripts of ECF No. 44 hearing, I recall Defendant discussing 8:22-cv-00110-PX.

3. ***Younger* never applied to *in rem* cases or when not seeking injunction**

This Court stated, "*Younger* abstention, absolute judicial immunity, and *Rooker-Feldman* doctrine apply, limiting the Court's jurisdiction." ECF No. 47 at 5. Each of these three will be addressed, starting with *Younger*.

A missing key in this Court's reasoning is *Liborati v. Ransom*, 664 F.Supp.2d 519, 522, n.2 (D.Md. 2009) (An orphans' court "exercis[es] *in rem* jurisdiction over a *res*[.]"). This Court takes note that it's an "estate matter." ECF No. 57 at 2. An "estate matter" is an *in rem* proceeding to distribute *res*. Moreover, there is no thorough analysis of my supplement directly addressing *Younger*'s third category, ECF No. 46, other than brief mentions at ECF No. 47 at 3, 7, and 8 n.4.

Another missing key is Crts. and Jud. Proc., §1-101 (orphans' court is not a court and lacks judges) enacted by the sovereign that organized Maryland government. *Please see attached* **Exhibit Two**. Another missing key is Plaintiff does not seek an injunction, for which *Younger* was created.

As one USDC compellingly stated, "the case is not an *in personam* proceeding and the abstention doctrine does not apply." *Eggleston v. State of Colo.*, 588 F.Supp. 1352, 1354 (D.Colo. 1984). "*In rem* proceedings are exceptions to the abstention doctrine[.]" *Id.* Professors Wright & Miller agree: "It is hard to think of *in rem* litigation that will involve the kind of interests that bring the *Younger* rules into play[.]" 17B *Fed. Prac. & Proc.* Juris. §4254 (updated May 21, 2025). Notwithstanding Wright and Miller's caution, this Court finds that an *in rem* estate matter does invoke *Younger*, without mentioning Wright & Miller or *Eggleston*.

"An orphans' court is not a 'court,' nor does it have 'judges.' Therefore, it does not satisfy the 'civil proceedings' element – *Younger* stumbles out the gate. Nor is a 'state court's ability' impaired because an orphans' court is not a 'court.'" ECF No. 46 at 3.

This Court does not mention that Plaintiff is not seeking an injunction against Defendant. Nonetheless, Defendant seeks to invoke *Younger*. "The Supreme Court has **not** addressed the issue raised by Defendant that *Younger* applies to purely damages actions, as here." ECF No. 46 at 4. *Sprint* was a directive to lower courts to **limit proliferation** of abstention, not to apply it in new and novel cases.

Nor does this Court mention my ~$2M of misappropriated funds from my personal bank account by an imposter/barrator. Defendant knows violations of Crim. Law, §8-301(c) and lacking a valid appointment, thus lacking standing, thus depriving any court, orphans' or circuit, of fundamental jurisdiction. This Court suggests that my claims for monetary relief can be redressed in state proceedings. *Cf.* ECF No. 47 at 7 ("state courts [can] provide an adequate opportunity for Plaintiff to raise his…§1983…."). This Court found that "Fourth Circuit has held that when a Plaintiff is 'able to present their claims and have them addressed in state court[,]' federal intervention is inappropriate." ECF No. 47 at 7.

This analysis is an error – at least 2 other USDC-MD judges contradict this Court, Judges Motz and Gallagher. *See*, ECF No. 46 at 3-4:

> As to *Middlesex's* "adequate opportunity to raise federal challenges" in orphans' court. The answer is a clear NO. An orphans' court can't adjudicate §1983 or constitutional challenges, nor award damages against Defendant, in his individual capacity. Orphans' court has no *in personam* jurisdiction over Defendant or anyone else. *See, Liborati v. Ransom*, at 524 ("Not only are the claims distinct, the orphans' court has no jurisdiction over the claims raised by [p]laintiff[] in this Court because it does not have jurisdiction to decide questions of" Defendant's individual capacity liability – much less a mechanism to try such issues). [Footnote 3: *See, McMillan-McCartney v. McMillan*, 2019 WL 2524238 at *9 (D.Md. June 19, 2019) ("Thus, while [federal] plaintiff's breach of contract and *quantum meruit* claims may relate tangentially to the parties' father's estate, they do not fall within the orphans' court's limited jurisdiction to administer the estate's assets.")].

This Court suggests that Plaintiff can file a §1983 action in orphans' court against Defendant in his individual capacity to recover ~$2M of misappropriated funds; notwithstanding, paradoxically, Plaintiff is "permanently enjoin[ed]…from filing any…papers relating to Decedent's estate," in orphans' or circuit courts. ECF No. 47 at 2. Moreover, this Court does **not** find any "actual impediments" to Plaintiff seeking damages against Defendant in "state forum[]." ECF No. 47 at 8. By misconstruing the facts and the law, this Court finds that there are no "actual impediments" to Plaintiff from litigating his federal claim and seeking damages in state forums; therefore, the "extraordinary circumstances" exception does not apply. *Id.*

This Court does not ignore the teaching of *Simopoulos v. Va. State Bd. of Med.*, 644 F.2d 321, 327-29 (4th Cir. 1981) (explaining that the bad faith and patent unconstitutionality exceptions to *Younger* abstention apply "if the state procedure fails to provide the federal plaintiff with an adequate opportunity to litigate in the state forum"); rather, misapplies it by turning it on its head with inconsistent factual findings.

Plaintiff cannot file <u>anything</u> in state forums, much less a claim against Defendant in his individual capacity for damages. The appeal to Md. appellate court is not to redress civil rights violations or to seek damages against Defendant. At the very least, discovery should be permitted to uncover Defendant's actions. *See*, ECF No. 46 at 13:

> Defendant seeks to "squelch," *id.* 102, Mrs. Pendleton's lack of appointment, use of false identities, injection of fake wives, filing counterfeit court order to steal millions, not just from one decedent, but she has been operating in the shadows since ~2007 – amassing ~100s of millions of dollars, *vel non.* ***"In this case, principles of federalism not only do not preclude federal intervention, they compel it."*** *Dixon*, 41 F.4th at 321. This USDC will be doing ***God's*** work by protecting the deceased.

### 4. Absolute Judicial Immunity Does Not Apply

This Court cites *Harmon v. Md. Dep't of Health & Mental Hygiene*, civil no. 13-605, March 7, 2013. But *Harmon* is not persuasive. It ignores Crts. and Jud. Proc., §1-101. Orphans' courts are not "courts" and lack "judges." *Harmon* was not concerned with a void and unenforceable order. *Harmon* also conflates civil final judgment rule with orphans' courts' modified final judgment rule. *See, Harmon, id* at n. 6 ("whether a final appealable judgment has been entered in the orphans' court"). *Cf. Knight v. Princess Builders*, 393 Md. 31, 49 (2006) ("must be 'aggrieved' by the orphans' court decision"). There is no "final appealable judgment" rule in orphans' court.

*First*, Defendant is not immune from liability for non-judicial actions taken as an orphans' court judge, an administrative body to administer *res* in an *in rem* proceedings. *Second*, Defendant is not immune for actions, though judicial in nature, taken in the complete absence of fundamental jurisdiction. *Cf.* ECF No. 47 at 9. As already discussed, since Pendleton used a fictitious identity, she was never appointed; lacking a valid appointment, she lacked standing; lacking standing, Defendant lacked fundamental jurisdiction over Pendleton's petition for pre-filing injunction, regardless of whether he acted through orphans' or circuit courts, producing a void and unenforceable order. Numerous commentators have described lack of jurisdiction as a "silver bullet." The burden of proof is on Defendant for his immunity defense. Defendant must demonstrate that immunity attaches for "each" specific function in question.

> [The Court has] consistently 'emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the **function** in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite ***sparing*** in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant.'

*Antoine v. Byers*, 508 US 429, 432 n.4. (1993).

This Court turned Defendant's burden on its head. "Defendant's arguments fail to satisfy the high standard required to defeat [sic] an assertion of judicial immunity." ECF No. 47 at 10. The burden was, and is, on Defendant to "satisfy the high standard" required to invoke absolute immunity for **each** function. This Court clearly states that "Defendant's arguments fail to satisfy the high standard required[,]" but then, inexplicably, mid-sentence, blames Plaintiff for not "defeat[ing]" immunity. There is no mention in ECF No. 47 of Defendant bearing any burden, or of Defendant meeting burden for **each** function, with citations to Defendant's filings, or how it was satisfied.

### 5. *Rooker-Feldman* Does Not Bar Plaintiff

Plaintiff is not "inviting district court [to] review and reject[] [orphans' court] judgment[]." ECF No. 47 at 12. As a point of law, the feigned order is void and unenforceable because false identity "Boynton" appears on the face of it. Pendleton attached and seized my personal bank accounts, currently valued at ~$2M. She used identity fraud, lacked a valid appointment, lacked standing, and circuit court lacked fundamental jurisdiction over a suit filed by a barrator/imposter. Plaintiff has, albeit unsuccessfully, attempted to expose Pendleton's crimes to recover his stolen funds. Defendant entered the scene of the crime, while lacking fundamental jurisdiction over a barrator/imposter, and feigning to be orphans' court, ordered Plaintiff's lifetime exile from seeking return of his ~$2M.

To Plaintiff's attempt to recover his ~$2M, this Court states that the true "source of [Plaintiff's] injury[,]" ECF No. 47 at 13, is Defendant's pre-filing injunction. *Id.* This Court incorrectly reasons that this is not a case in which Plaintiff's injury at the hands of a third party was ratified, acquiesced in, or left unpunished by an orphans' court decision without being produced by an orphans' court judgment. *Id.*

Nonetheless, that is exactly what Defendant did. Defendant covered up his so-called friend's crimes by entering a void and unenforceable pre-filing injunction to prevent recovery of ~$2M stolen, and from criminal exposure of his friends. It is the "underlying" theft of ~$2M using fictitious identity that "caused the harm – not" Defendant's orphans' court injunction.[5]

If Plaintiff had not been robbed of ~$2M or if funds were returned and Plaintiff made whole, only then "there would be no injury." ECF No. 47 at 13. The injury that Plaintiff complains of is theft of ~$2M. Absent the theft, Plaintiff has no interest in orphans' court proceedings since he is not a legatee. This Court misconstrued my injury. I am not arguing that I desire a right to petition in orphans' court; rather, I seek the return of my stolen funds by a known violator of Crim. Law, §8-301(c), that used a pretext of a fake wife, and her connections in state judiciary to misappropriate ~$2M; which Defendant is concealing and leaving Pendleton "unpunished." ECF No. 47 at 13.

Amend.Comp. at page *one* states: "Approximately $2 million, inclusive of interest, was fraudulently and criminally attached and seized by 'Mrs. Lynn C. Pendleton' using a false identity." ECF No. 31 at 1.

> Plaintiff would not have been harmed had Defendant exposed corruption, facilitated return of Plaintiff's ~$2 million after unlawfully attaching/seizing personal bank accounts, referred Pendleton, Debelius, Maloney, and Grant to bar counsel and for criminal investigation; instead, Defendant gleefully chose to conceal corruption, continued using false identity, denied access to courts, altered documents to docket in estate matter, retaliated, fabricated/omitted evidence, violated equal protection rights, and sought another retaliatory ~$1 million judgment against Plaintiff as punishment for exposing "inner-workings."

---

[5] Earlier this Court found that Plaintiff is not barred from pursuing his claims against Defendant in state forums, even to seek damages for civil rights violations. *See*, ECF No. 47 at 7 (Plaintiff is "able to present their claims and have them addressed in state court[,]" federal intervention is inappropriate). Now, this Court finds that there is "harm" by the pre-filing injunction? The two positions are inconsistent.

ECF No. 31 at ¶63. *See, also* ECF No. 31 at ¶69 (same); ¶72 (same); ¶76 (same); ¶80 (same); ¶89 (same); ¶134 (same); ¶150 (same), and FN 3 at 6 ("Plaintiff's personal bank accounts were 'non-probate' assets. By contrivance, a 'shell' identity seized 'non-probate' assets and immediately deposited seized funds in a bank account titled in the name of 'Lynn C. Pendleton.' Plaintiff believes all his personal funds, plus interest, ~$2 million, have been spent by 'Lynn C. Pendleton.' Defendant was duty-bound to expose 'Lynn C. Pendleton' and facilitate return of seized funds. Instead, he concealed her crimes."). **Committing and concealing crimes are not judicial acts**.

Rather than punishing theft of ~$2M, Defendant enabled it by concealing crime. This Court identifies Defendant's void and unenforceable pre-filing injunction as underlying "injury," as if Plaintiff doesn't want his ~$2M back and wasn't animated by the initial theft to expose Pendleton's crimes. *Cf.* ECF No. 47 at 14 ("The vexatious litigant order context in this case differs. Plaintiff's injury as he frames it—Defendant foreclosing his use of the judicial system—is one and the same with the Maryland court's order resulting in the injunction against him."). No mention of lack of fundamental jurisdiction rendering order void and unenforceable.

This Court conflates theft of ~$2M with a void and unenforceable pre-filing injunction as underlying injury. Simply put, if Pendleton had not violated criminal statutes to attach and seize my personal bank accounts, or if her connections, including Defendant, had refused to oblige her, then there would be nothing for Defendant to enjoin; because my involvement is solely to recover my stolen funds. Without the theft, there is no reason for my involvement in what is purely an administrative *in rem* matter to distribute *res* -- a matter for sole-legatee. (By the way, sole-legatee is Ms. Oxana N. Parikh; my father, Dr. Parikh, left his entire estate to her in his valid-Will.).

*Monbo*, ECF No. 47 at 15, is not binding precedent. *Davani v. Va. DOT*, 434 F.3d 712, 719 (4th Cir. 2006) is binding precedent, which offered district courts a clarifying example post-*Exxon-Mobil*:

> Suppose a plaintiff sues his employer in state court for violating…anti-discrimination law and…loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, ***he will be alleging injury based on the employer's discrimination***. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

Similarly here, Plaintiff does not allege that the order caused him injury, rather it's the theft of ~$2M by a person Defendant is protecting and enabling. A void and unenforceable order can't cause injury by essence of its voidness. Plaintiff's claims do not challenge the state decision, for there is no valid decision to challenge; nor seek reversal; therefore, my claims are independent from that alleged decision. Any challenge or review of that decision, either in state appellate courts, or "by way of certiorari petition to the Supreme Court," ECF 32-1 at 12, would **never** award damages for federal civil rights violations caused by Defendant. *Accord, Davani*, 434 F.3d at 718 ("If he is not challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply.").

Defendant claims that "Plaintiff [is] asking this Court to **nullify** the orphans' court November 13, 2023 order[.]" ECF 32-1 at 12. Nothing could be further from the truth. Plaintiff is not requesting that federal court "nullify" Defendant's order; rather, Plaintiff seeks damages for civil rights violations inflicted by Defendant, acting without jurisdiction.[6] This mischaracterized "nullify" thesis is the heart of Defendant's *Rooker-Feldman* defense.

---

[6] Plaintiff quoted from *Pulley v. State*, 287 Md. 406, 417 (1980), *see* ECF No. 31 at 4, to demonstrate that Defendant's actions were without jurisdiction and those "functions" are not immune. The point made was judicial immunity ends where jurisdiction is lacking.

### 6. Should be Agnostic towards prior district court decisions

**Younger:** This Court cites to and relies on USDC-MD prior decisions without finding them to be persuasive, compelling, or correctly decided in light to Md. law. This Court should be agnostic in reviewing prior USDC-MD decisions regarding Md. law. *See, Nat'l Union Fire Ins. v. Allfirst Bank*, 282 F.Supp.2d 339, 351 (D.Md. 2003) ("Of course, no decision of a district court judge is technically binding on another district court judge, even within the same district."). Judge Nickerson ultimately adopted a prior USDC-MD opinion, "not because it is binding, but because it is compelling."

In my opinion, the two compelling and persuasive prior USDC-MD decisions were by Judges Motz and Gallagher. *See, Liborati v. Ransom*, 664 F.Supp.2d 519, 522, n.2 (finding estate proceedings are *in rem*, and cannot litigate issues other than purely probate in orphans' court); *McMillan-McCartney v. McMillan*, 2019 WL 2524238 at *9 ("do not fall within the orphans' court's limited jurisdiction to administer the estate's assets.").

This Court relies on "*Strickland-Lucas v. Citibank, N.A.*, ELH-16-0805, 2017 WL 2876475, at *7 (D.Md. July 6, 2017) ('[c]ases in the third category generally involve a state's contempt process or a state court's efforts to enforce its own order or judgment'); *Accohannock Indian Tribe v. Tyler*, SAG-21-02550, 2021 WL 5909102, at *13 (D.Md. Dec. 14, 2021) (assuming the proceedings on appeal in Maryland Circuit Court constitute an ongoing state judicial proceeding);" ECF No. 47 at 6-7. ***However***, neither decision considers that *Sprint* does **not** extend to cases that do not involve a request for an injunction or to *in rem* proceedings. This Court makes no mention of *in rem* or how Judge Motz was wrong in his decision.

Next, this Court states that Plaintiff can pursue his civil rights claims in orphans' court by citing "*Balunsat v. Cecil Cnty. Gov't*, RDB-12-0360, 2012 WL 6681914, at *6 (D.Md. Dec. 21,

Page 22 of 30

2012) ('the Maryland state judicial system may address and decide issues of constitutional and other federal law')[.]" ECF No. 47 at 7. This general proposition is inapplicable to orphans' court proceedings, as Judges Motz and Gallagher have already held in compelling and persuasive decisions. For this general proposition to hold, Plaintiff would have to file a civil rights complaint against Defendant in Montgomery County circuit court, which this Court has already determined is an impossibility due to Defendant's actions of stripping Plaintiff of his Constitutional right to access circuit court. Plaintiff suggests that this Court erred in its *Younger* analysis.

**Absolute Immunity:** This Court states, "**Judges** fit squarely within this category of officials who are entitled to immunity from suits for money damages in their individual capacities. …*Harmon v. Md. Dep't of Health & Mental Hygiene*, ELH-13-605, 2013 WL 867992, at *4 (D.Md. March 7, 2013)." ECF No. 47 at 8-9. But *Harmon* is simply wrong. It ignores Crts. and Jud. Proc., §1-101(orphans' courts are not "courts" and lack "judges").

USDC-MD did not organize state government; the sovereign did – and the sovereign has spoken. Moreover, *Harmon* conflates civil final judgment rule with orphans' courts' modified final judgment rule. No doubt the parties did not properly brief. *Harmon* is not compelling or persuasive. *Harmon* attempts to reorganize state governmental functions as the district court would like them organized, while ignoring how the state **actually** organized them.

Next, this Court unequivocally states that orphans' court **do** have "authority to issue orders, including injunctions[,]" ECF No. 47 at 10, while disregarding all Plaintiff's citations demonstrating that only circuit courts have authority to issue injunctions.[7]

---

[7] This Court doesn't explain how an *in rem* proceeding can issue an injunction for which *in personam* jurisdiction is needed against Plaintiff? According to my research, never in the ~250 year history of Maryland, has an orphans' court issued an injunction. Nor can this Court cite to a single case for such authority.

Importantly, this Court disregarded Defendant's colleague who unreservedly stated that Defendant acted as circuit court:

> Defendant cannot escape these 5 impeaching facts: (1) his written order clearly states he acted as "circuit court," ECF 31, at ¶18; (2) he imposed a lifetime permanent injunction against Plaintiff from filing in "circuit court" and "orphans' court," ECF 31-1, at 15; (3) his **colleague** twice **corroborated** that **Defendant acted as "circuit court,"** ECF 31, at ¶19-20; (4) caption on his written order clearly states "in the circuit court," *id.* at ¶12; and, (5) there was no circuit court civil action commenced, no summons issued, no process served, etc. etc. These cold hard facts confirm that Defendant acted without jurisdiction in circuit court. Stated otherwise, he acted as an individual merely feigning to be a circuit court judge presiding over a civil case.

Plaintiff's Opposition, ECF No. 38 at 24. This Court appears to suggest that Defendant may have been **confused** about whether he acted as orphans' or circuit court. *Cf.* ECF No. 47 at 11 ("which may explain the mislabeled document."). This is not an argument that Defendant made, because there is no citation to Defendant's argument. This is an argument advanced by this Court only. In any event, this sort of feigned confusion was cleared up by enacting Crts. and Jud. Proc., §1-101. This Court cites *Azelson & Williamowsky, P.C.* for the proposition that confusion is the rule. *See,* ECF No. 47 at 11-12. *Azelson* is neither persuasive nor compelling without a discussion of sovereign enactments. Would a "tradition" of robbing people act as an absolute defense against legislative enactments prohibiting it? Notwithstanding, these are arguments that Defendant never made – even though he carried the burden of proof on immunity. This Court erred.

Plaintiff suggests that this Court erred in its absolute immunity analysis. The question whether Defendant had jurisdiction over Pendleton is contested. This question is the **nub** of whether or not Defendant had fundamental jurisdiction, regardless of his actions as orphans' or circuit court. Plaintiff suggests that dismissal on immunity under 12(b)(1) is improper. Defendant must undergo a thorough examination before such a drastic remedy can be proscribed. Plaintiff is

entitled to discovery and Defendant can then proceed under Rule 56 *if* he can prove there are no factual disputes.[8]

Plaintiff states that Pendleton was never appointed and lacked standing. *See*, ECF No. 31 at ¶51 ("Notwithstanding **lack of jurisdiction**, Defendant was '*very interested* in making that determination and ***putting an end*** to unnecessary litigation [exposing corruption], and litigation that is not brought in good faith, and without substantial justification.'"); *id.* at ¶51 ("Only a circuit court can enter an injunction, if there is a current/active circuit court matter and a true legal person petitioning with standing. Defendant knew that there was no current active circuit court matter to enter an injunction in, for docketing and hearing purposes, and the petitioner was not a true legal person."); *id.* at ¶73 ("Defendant hindered and frustrated Plaintiff's…challenge to 'Pendleton' never being appointed, nonetheless operates under a false identity, 'Lynn C. Boynton,' to misappropriate estate assets and seize Plaintiff's personal bank accounts, aided by Defendant."); *id.* at ¶84 ("Tellingly, Defendant did not ban two false wives nor an un-appointed 'Pendleton' using a false identity from accessing courts. Per Defendant, only imposters, barrators, and fraudsters are permitted to file false claims in Decedent's estate and sue Plaintiff in circuit court; and Plaintiff's right to defend is taken away."); *id.* at ¶103 n.10 ("Defendant concealed/omitted that Pendleton was never appointed"); *id.* at ¶106 ("A person using a fictional identity can't be appointed to a position of trust in Decedent's estate. Yet, Defendant admits that is exactly what he is aware of, concealed, and participates in."); and, *id.* at ¶119 ("Pendleton was never appointed").

---

[8] *Ostrzenski v. Seigel*, 177 F.3d 245, 247 (4th Cir. 1999) (affirmed a dismissal for failure to state a claim upon which relief could be granted, Rule 12(b)(6), because he was entitled to absolute quasi-judicial immunity from prosecution); *Gibson v. Goldston*, 85 F.4th at 222 ("Judge Goldston moved for summary judgment, claiming she was entitled to absolute judicial immunity. The district court denied her motion[.]" CA4 affirmed.).

This Court's citations to "*Perlmutter v. Verone*, No. GLH-14-2566, 2015 WL 4757183, at *3 (D.Md. Aug. 11, 2015) (holding that absolute judicial immunity applied where judges were 'acting within their respective judicial capacities and jurisdiction in presiding over the orphan[s'] [c]ourt" and the challenges were to the judge's rulings made while presiding over proceedings relating to the estate matter); and *Harmon*, 2013 WL 867992, at *4 (applying absolute judicial immunity where plaintiff challenged an orphans' court judgment concerning a matter relating to a decedent's estate)," ECF No. 47 at 10 n.5, are not persuasive. Neither *Perlmutter* nor *Harmon* mention Crts. and Jud. Proc., §1-101 (orphans' courts are not courts and lack judges), or that committing and concealing crimes are not judicial acts. They are not compelling or persuasive.

Moreover, the "Supreme Court has indicated that, in assessing whether absolute immunity applies in a particular situation, we should consider whether the system in question contains adequate procedural safeguards, such that private litigation is unnecessary to protect constitutional rights." *Goldstein v. Moatz*, 364 F.3d 205, 217 (4th Cir. 2004). No such analysis was provided by Defendant or by this Court.

On this point, Plaintiff draws this Court's attention to the automatic statutory stay, which Defendant and Md. appellate courts refuse to follow, even to a void and unenforceable order. Moreover, Defendant and Md. appellate courts willingly use fictitious identity for Pendleton, ignore counterfeit document, and fake wives. This is to aid robbers who have powerful connections **within** state judiciary. Distressingly, Pendleton is free to roam the streets and rob people – even the Md. AG and Defendant lie to protect her. This situation is a nightmare that could only exist under a foreign despotic regime; yet, it's happening right before this Court's eyes.

***Rooker-Feldman:*** This Court states, "abstention based on the *Rooker-Feldman*[]" is warranted. ECF No. 47 at 13. Finding each "legal claim[] points to the same source of injury: the

Maryland vexatious litigant order. If the state **court** had not issued this order, Plaintiff would not be enjoined from litigating in Maryland orphans' and circuit courts, and, based on Plaintiff's Second Amended Complaint, there would be no injury." *Id.* Therein lies the rub; the sovereign disagrees. *Cf.* Crts. and Jud. Proc., §1-101 (orphans' court is not a court and lacks judges).

Moreover, this analysis overlooks the stolen ~$2M, and the voidness and unenforceability of Defendant's order. This Court conflates stolen bank account funds with being "enjoined from litigating[.]" *Cf.* ECF 31 at ¶59 ("Plaintiff is humiliated, depressed, sad, shamed, insulted, mocked, and laughed at. He cannot support or provide for himself and his son – can't give him birthday or Christmas presents. Nonetheless, *God* gives him the strength to *try* and seek justice."). How exactly did the feigned void and unenforceable orphans' court injunction deprive me of ~$2M?

Plaintiff has been trying to expose corruption in the seizure of my personal bank accounts, and Defendant sought to protect his friends from criminal exposure or from having to return stolen property, with a knowing void and unenforceable order. The injury was the theft, the injunction was a **cover-up** to protect Defendant's friends from criminal liability. Put simply, the theft occurred **first**, and animated attempts to regain stolen funds. Only after Plaintiff's repeated and failed attempts to expose insider corruption, did Defendant step in to "squelch" or suppress Plaintiff's efforts. *Air Evac EMS v. McVey*, 37 F.4th 89, 101-102 (4th Cir. 2022) (describing Commissioners actions to favor one over the other, protecting one, while prejudicing another).

Similar to *Husley v. Cisa*, 947 F.3d 246, 250-51 (4th Cir. 2020), Plaintiff's injury resulted from criminal activities of third parties seizing his personal funds, and Defendant's actions to conceal and protect those third parties from criminal liability. Although the **cover up** occurred in the context of feigned orphans' court matter, it "merely enabled" or concealed the theft by Defendant – not caused by Defendant. *Id.* at 251. Stated otherwise, this is a case in which "[a] plaintiff's

injury at the hands of a third party [was] 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the [feigned orphans'] court judgment." *Id.* at 250. By disregarding allegations in Amend.Comp. as true, only then could citation be made to *Moseley v. Winston*, RDB-18-810, 2018 WL 3740699, at *4-5 (D.Md. Aug. 7, 2018). *Moseley* is hardly on point or factually similar.

Neither is "*Monbo v. Richmond American Homes of Md.*, No. 24-cv-2869, 2025 WL 1207384, at *4 (D.Md. April 25, 2025) (holding that *Rooker-Feldman* barred claims in which plaintiff asked the federal district court to stand in for the state appellate court and review state court judge's rulings)." ECF No. 47 at 15. There is no valid and enforceable ruling to review. At no point has Plaintiff requested a vacatur, to set aside, or review Defendant's feigned order. Rather, Plaintiff seeks damages under civil rights statutes.

No doubt these unreported decisions were decided on facts and laws presented by the parties. No doubt those Judges are excellent jurists and scholars. Perhaps the parties failed to properly advance their argument—I don't know. But a choice to rely on unreported decisions should be made after carefully considering whether they are compelling and persuasive on the merits, not by their proliferation. A wise district court once stated that a "persuasiveness" test should be performed:

> [W]hether or not a district court case is reported has no impact on its ultimate authority or lack of authority. No district court decision is "binding" on another district court, and **its "persuasiveness"** — the relevant consideration — **is determined by the substance of the case**, not by its place in the Federal Supplement.

*Calhoun v. Colvin*, 959 F.Supp.2d 1069, 1077 n.6 (N.D. ILL 2013). That brings us back to the beginning; two district court cases that were correctly decided, are compelling and persuasive are nowhere to be found in ECF No. 47; *Liborati v. Ransom*, 664 F.Supp.2d 519, 522, n.2, and *McMillan-McCartney v. McMillan*, 2019 WL 2524238 at *9.

This Court is humbly requested to reconsider and help me expose crimes that Defendant seeks to conceal. *See, United States v. Jackson*, 126 F.4th 847, 868 (4th Cir. 2025). When Defendant, in his written submissions and through his attorney/agent, made oral misrepresentations to this Court about Pendleton's identity, fake-wife, counterfeit documents, he must be referred to U.S. Attorney for not only obstructing justice, but because the "crux" of his fraud was "submitting falsified paperwork," the defendant's conduct fell "cleanly within the aggravated identity theft statute's scope." *Id.* at 868-69. Or, at least USA's Office should be requested to look into probable cause.

The Supreme Court held that §1028A(a)(1) identity theft offenses occur "when the defendant's misuse of another person's means of identification is at the crux of what makes the conduct criminal," i.e., when the means of identification is "used in a manner that is fraudulent or deceptive ..., [which] can often be succinctly summarized as **[deception about] 'who' is involved.**" *Dubin v. United States*, 599 U.S. 110, 113, 132 (2023). Indisputably, Defendant and his attorney/agent were deceptive about "who" is involved -- they used false identity "Boynton" to conceal "Pendleton." As we all know, there is no judicial immunity from criminal prosecution.

In conclusion, a picture speaks a thousand words:

ECF No. 38-2 (declaration of Plaintiff) at ¶70. The one place where you can't lie is to a heavily regulated bank. You must produce valid ID and Social Security Card. Defendant has been lying to this Court. Her real name is "Pendleton," obviously, and she was never appointed. Defendant lacked fundamental jurisdiction, regardless of feigning to be orphans' or circuit court to issue his void and unenforceable order because he needed to conceal her crimes and theft – only discovery will reveal details of his true financial involvement. Defendant is fixing cases by committing a crime, Crim. Law §8-301(c), which is not a judicial act historically performed by judges. *God Bless this Court* and

Respectfully Submitted,

_____

Namish Parikh, Plaintiff, *pro se*

### Request for Hearing and Renewed Request for Subpoenas

I request a hearing and renew my prior <u>consented</u> to subpoenas to prove a lack of fundamental jurisdiction and Defendant's criminal activities. If Defendant has nothing to hide, then he has nothing to worry about.

_____

Namish Parikh, Plaintiff

### Certificate of Service

I hereby certify that a copy of this Reconsideration motion was mailed on February 18, 2026, to attorneys for Defendant: Mr. Mark Weisner, 200 St. Paul Place, 20th Floor, Baltimore, Md. 21202.

_____

Namish Parikh